UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DB STRUCTURED PRODUCTS, INC.<br><br>                    Plaintiff,<br><br>          -against-<br><br><br><br>MORTGAGE CORPORATION OF AMERICA, INC., d/b/a ZONE FUNDING<br><br>                    Defendant. | **ECF CASE**<br><br>**07 Civ. 4106 (DLC)**<br><br><br>**<u>AFFIDAVIT OF JOHN P. DOHERTY IN SUPPORT OF APPLICATION FOR DEFAULT JUDGMENT</u>** |

| | |
|---|---|
| STATE OF NEW YORK | ) |
| | ) ss.: |
| COUNTY OF NEW YORK | ) |

John P. Doherty, being duly sworn, deposes and says:

1.     I am a member of the Bar of this Court and a member of THACHER PROFFITT & WOOD LLP, attorneys for Plaintiff, DB Structured Products, Inc. ("Plaintiff") in the above-captioned matter.

2.     I submit this affidavit pursuant to Rule 55.2(b) of the Civil Rules for the Southern District of New York in support of Plaintiff's application for a Default Judgment against Mortgage Corporation of America, d/b/a Zone Funding ("Defendant").

3.     On May 25, 2007 the above-captioned action ("Action") was commenced with the filing of the Complaint.

4.     On June 5, 2007, a copy of the (i) Complaint; (ii) Summons; (iii) Statement Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure; (iv) Civil Cover Sheet; (v) Individual Practices of Judge Denise Cote; (vi) Individual Rules of Practice of Judge Kevin

Nathaniel Fox; (vii) 3rd Amended Instructions For Filing An Electronic Case or Appeal; (viii) Procedures for Electronic Case Filing; and (ix) Guidelines for Electronic Case Filing were properly served on Defendant by personally serving Defendant's registered agent, Bradley Albert Rice, 4277 Valley Fair Street, Simi Valley, CA 93063. A true and correct copy of the Summons and Complaint is attached hereto as Exhibit A.

5.     On June 18, 2007, proof of such service was filed with the Clerk. A true and correct copy of such proof of service is attached hereto as Exhibit B.

6.     Defendant has failed to plead or otherwise defend this Action.

7.     The time within which Defendant was permitted to file an answer to the Complaint or otherwise move has now expired and has not been extended.

8.     On August 16, 2007, the Clerk of the Court entered a Certificate of Default against the Defendant. The Certificate of Default is attached hereto as Exhibit C.

9.     As more fully set forth in the Complaint attached hereto as Exhibit A, the Plaintiff's claim is contractual in nature inasmuch as damages sought in the Complaint arise from Defendant's breach of its duties and obligations under a Seller Loan Purchase Agreement ("Agreement") entered into between Plaintiff and Defendant on or about November 17, 2005. Damages to be awarded Plaintiff pursuant to a default judgment can be readily determined by reference to the Agreement and other exhibits to the Complaint. As of September 14, 2007, such damages amount to $13,516,761.56, as more fully set forth in the Statement of Damages, attached hereto as Exhibit D.

10.     As such, an inquest is not necessary to determine Plaintiff's damages. In the event the Court believes an inquest is necessary, for the foregoing reasons, an inquest can be held and damages determined thereby without the Defendant's presence or participation.

2

11.    Within thirty (30) days following payment in full of the amount awarded by the Default Judgment, Plaintiff shall return to Defendant the Mortgage Loans[1] as set forth in the Purchase Agreement.

12.    Accordingly, Plaintiff requests that Defendant show cause why a default judgment should not be entered against it.    A proposed Default Judgment has been attached hereto as Exhibit E.

By: _____
                    JOHN P. DOHERTY

Sworn to before me this
2__ day of August 2007

_____
Notary Public

CHRISTOPHER A. LYNCH
Notary Public, State of New York
No. 02LY6151597
Qualified in Queens County
Commission Expires Aug. 21, 2010

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Complaint.

3

# EXHIBIT A

AO 440 (Rev. 10/93) Summons in a Civil Action – SDNY WEB 4/99

# United States District Court

__SOUTHERN__ _____ __DISTRICT OF__ _____ __NEW YORK__

DB STRUCTURED PRODUCTS, INC.

V.

MORTGAGE CORPORATION OF AMERICA,
INC., d/b/a ZONE FUNDING

## SUMMONS IN A CIVIL CASE

CASE NUMBER:

07 CV 4106

JUDGE COTE

TO: (Name and address of defendant)

MORTGAGE CORPORATION OF AMERICA, INC., d/b/a ZONE FUNDING
2315 Kuehner Drive, Suite 115
Simi Valley, CA 93063-3960

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

THACHER PROFFITT & WOOD LLP
Richard F. Hans (RH-0110)
John P. Doherty (JD-3275)

Two World Financial Center
New York, New York 10281
(212) 912-7400

an answer to the complaint which is herewith served upon you, within _____ TWENTY _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MAY 2 5 2007

J. MICHAEL McMAHON

CLERK

DATE

(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
                    Date                              Signature of Server

_____
Address of Server

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

JUDGE COTE

07 CV 4106

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DB STRUCTURED PRODUCTS, INC.

                 Plaintiff,

-against-

MORTGAGE CORPORATION OF AMERICA, INC., d/b/a ZONE FUNDING

                 Defendant.

Civ. No.

MAY 2 5 2007

**COMPLAINT**

---

Plaintiff DB Structured Products, Inc. ("DBSP" or "Plaintiff"), by its attorneys, Thacher Proffitt & Wood LLP, for its complaint against defendant Mortgage Corporation of America, Inc., which at times relevant hereto conducted business under the name "Zone Funding" ("Defendant") (Plaintiff and Defendant, collectively, the "Parties") alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over all claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(a).

### THE PARTIES

3.     Plaintiff DBSP is a corporation organized and existing under the laws of the State of Delaware. DBSP maintains its principal place of business at 60 Wall Street, New York, New York.

4.     Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of California and maintains its principal place of business at 2315 Kuehner Drive, Suite 115, Simi Valley, CA.

## FACTUAL ALLEGATIONS

**The Seller Loan Purchase Agreement**

5.     On or about November 17, 2005, DBSP and Defendant entered into a Seller Loan Purchase Agreement (the "Purchase Agreement").   A copy of the Purchase Agreement is attached hereto as Exhibit 1.  Exhibit 1 is hereby incorporated herein as if fully set forth.

6.     As set forth in Section 13 of the Purchase Agreement, the Parties agreed that the Purchase Agreement "shall be governed by, and construed and enforced in accordance with, the laws of the State of New York in effect at the time of execution hereof and applicable to agreements executed and performed in New York, without giving effect to conflict of laws principles thereof."

7.     As set forth in Section 13 of the Purchase Agreement, Defendant consented to DBSP bringing any action relating to the Purchase Agreement in the United States District Court for the Southern District of New York and consented to the jurisdiction of this Court.

8.     In connection with individual transactions between the Parties pursuant to the Purchase Agreement, DBSP and Defendant also entered into letter agreements, including, but not limited to, those dated April 12, 2006, April 24, 2006, and September 19, 2006 (collectively, the "Letter Agreements," and together with the Purchase Agreement, the "Agreements").

9.     The Letter Agreements state that they "shall be governed in accordance with the laws of the state of New York, without regard to conflict of laws rules."

**Defendant's Failure to Repurchase**
**Loans With Early Payment Defaults From DBSP**

10.     Pursuant to the Agreements, Defendant from time to time offered to sell and DBSP agreed to purchase certain mortgage loans ("Mortgage Loans") in accordance with the

2

terms of the Agreements and the Deutsche Bank Correspondent Lending Seller Guide (the "Seller Guide").

11.    Pursuant to Section 9 of the Purchase Agreement, Section 2(c) of the Letter Agreements and Volume 1 of the Seller Guide, Defendant agreed to repurchase any Mortgage Loan in early payment default, as described in the Agreements and the Seller Guide.

12.    Pursuant to the Agreements and the Seller Guide, DBSP may, in its sole discretion, determine that a Mortgage Loan is in early payment default and thus subject to the repurchase obligation.

13.    Certain of the Mortgage Loans experienced early payment or early delinquency defaults, as described in the Letter Agreements and the Seller Guide (hereinafter, such Mortgage Loans shall be collectively referred to as "Early Payment Default Loans"). Attached as Exhibit 2 is a schedule of the Early Payment Default Loans, which is hereby incorporated herein as if fully set forth.

14.    Accordingly, pursuant to Section 9 of the Purchase Agreement, Section 2(c) of the Letter Agreements and Volume 1 of the Seller Guide, Defendant is obligated to remit to DBSP the Repurchase Price (as defined in the Letter Agreements and the Seller Guide) with respect to each Early Payment Default Loan.

15.    On April 26, 2007, DBSP issued a demand to Defendant to repurchase the Early Payment Default Loans on or before May 10, 2007 (the "Demand Letter"). Attached as Exhibit 3 is a copy of the Demand Letter, which is hereby incorporated herein as if fully set forth.

16.    In addition, prior to DBSP's issuance of the Demand Letter, DBSP also notified Defendant via one or more emails and/or other communications that certain Mortgage Loans, including the Early Payment Default Loans, were in early payment default status. In addition to

3

the Demand Letter, these email notifications separately triggered Defendant's obligations to repurchase such Early Payment Default Loans, pursuant to the Agreements and the Seller Guide.

17.    To date, Defendant has failed to repurchase the Early Payment Default Loans, or otherwise compensate DBSP, notwithstanding its clear contractual obligation to do so.

18.    The aggregate Repurchase Price for the Early Payment Default Loans, excluding attorneys' fees and other costs and expenses, exceeds $13 million.

19.    DBSP has performed all of its obligations under the Agreements and the Seller Guide.

20.    As a result of Defendant's failure to repurchase the Early Payment Default Loans, DBSP is required to maintain possession and maintenance of the Early Payment Default Loans, and may be exposed to any claims or losses that might be sustained by reason of ownership of each such loan.  Moreover, because the Early Payment Default Loans are in default, DBSP is unable to include certain of the Early Payment Default Loans in securitizations or other packages, a specific purpose, known to Defendant, for which DBSP purchased the Early Payment Default Loans.  Accordingly, DBSP's harm is not solely monetary and cannot be adequately compensated by damages.

**Indemnification**

21.    Pursuant to Section 5 of the Purchase Agreement, Defendant agreed to indemnify, defend and forever hold harmless DBSP, from and against any and all liabilities, loss, injury or damages, judgments, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to attorneys' fees) by whomever asserted, relating to Defendant's breach of a representation, warranty, covenant, agreement or obligation of Defendant under the Purchase Agreement.

4

22.    Pursuant to the Seller Guide, Defendant agreed to indemnify and hold harmless DBSP from all losses, damages, penalties, fines, forfeitures, court costs and attorneys' fees, judgments, and any other costs, fees and expenses resulting from any breach of any warranty, obligation or representation under the Purchase Agreement.

23.    Defendant has breached the representations and warranties in Section 9 of the Purchase Agreement and in the Seller Guide that Defendant would repurchase the Early Payment Default Loans from DBSP. As a result, Defendant owes DBSP indemnification for all liabilities, loss, injury or damage, penalties, fines, forfeitures, judgments, damages, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to attorneys' fees) that DBSP may sustain.

24.    Pursuant to the Purchase Agreement and the Seller Guide, Defendant agreed that it will indemnify DBSP and hold it harmless against all court costs, attorneys' fees and any other costs, fees and expenses incurred by DBSP in enforcing the Purchase Agreement.

25.    Defendant's indemnification obligations survive the Purchase Date, the termination of the Purchase Agreement and the disqualification or suspension of Defendant.

26.    Defendant's indemnification obligations expressly include the legal fees and related costs and any other costs, fees and expenses DBSP may sustain in connection with Defendant's failure to observe and perform its obligation to repurchase the Early Payment Default Loans, including but not limited to, the attorneys' fees and other expenses incurred by DBSP in this action.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract - Agreements)**

27.    Plaintiff DBSP realleges paragraphs 1 through 26 of this complaint as if fully set forth herein.

28.     Under the Agreements and the Seller Guide, Defendant agreed to repurchase the Early Payment Default Loans from DBSP.

29.     DBSP has demanded that Defendant repurchase the Early Payment Default Loans.

30.     Defendant has refused and failed to repurchase the Early Payment Default Loans.

31.     As a direct, proximate and actual result of Defendant's breach of its obligation to repurchase the Early Payment Default Loans, DBSP has suffered damages in an amount to be determined at trial, but which is not less than $13 million as of April 30, 2007, plus interest.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment)

32.     Plaintiff DBSP realleges paragraphs 1 through 31 of this complaint as if fully set forth herein.

33.     In consideration of the sale of the Early Payment Default Loans by Defendant to DBSP, Defendant received payment from DBSP.

34.     Defendant has wrongfully refused to repurchase the Early Payment Default Loans, causing DBSP to lose the use of those moneys due and owing, and requiring DBSP to incur attorneys' fees to recover these costs due under the Agreements and the Seller Guide. It would be unjust and inequitable to allow Defendant to benefit in this manner.

35.     By reason of the foregoing, Defendant has been unjustly enriched at the expense of DBSP, and DBSP has suffered damages in an amount to be established at trial.

## THIRD CLAIM FOR RELIEF
### (Indemnification for Legal Fees And Related Costs)

36.     Plaintiff DBSP realleges paragraphs 1 through 35 of this complaint as if fully set forth herein.

6

37.    Pursuant to Section 5 of the Purchase Agreement and the indemnification provisions in the Seller Guide, Defendant agreed to indemnify DBSP for any and all claims, losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other costs, fees and expenses that DBSP may sustain that are in any way related to Defendant's breach of Defendant's representations, warranties, covenants, agreements or obligations under the Purchase Agreement and the Seller Guide.

38.    Defendant has breached its representations and warranties and failed to observe its obligations, causing DBSP to suffer the damages for which Defendant owes indemnity.

39.    Defendant is therefore liable to DBSP for all of DBSP's legal fees and related costs, and all other costs, fees and expenses that DBSP has incurred, is incurring and will incur in connection with Defendant's failure to observe and perform its obligations to repurchase the Early Payment Default Loans.

### FOURTH CLAIM FOR RELIEF
**(Specific Performance)**

40.    Plaintiff DBSP realleges paragraphs 1 through 39 of this complaint as if fully set forth herein.

41.    The Agreements and Seller Guide are valid, enforceable contracts between Defendant and DBSP.

42.    Under the terms of the Agreements and Seller Guide, DBSP and Defendant made several valid and enforceable mutual agreements.

43.    DBSP substantially performed its obligations under the Agreements and Seller Guide by, *inter alia,* purchasing Mortgage Loans from Defendant pursuant to the terms and provisions of the Agreements and the Seller Guide.

7

44.    DBSP is willing and able to perform its obligations under the Agreements and Seller Guide by, including, but not limited to, delivering repurchased loans to Defendant.

45.    Upon information and belief, Defendant is able to continue to perform under the Agreements and Seller Guide by, including but not limited to, repurchasing the Early Payment Default Loans.

46.    DBSP has suffered harm resulting from Defendant's refusal to repurchase the Early Payment Default Loans for which there is no adequate remedy at law.

47.    DBSP has demanded, and is entitled to, specific performance of Defendant's repurchase obligations under the Agreements and Seller Guide.

48.    As a result of the foregoing breaches, pursuant to the Agreements and Seller Guide, Defendant is obligated to pay DBSP an amount to be determined at trial, but which is not less than $13 million as of April 30, 2007, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff DBSP respectfully requests judgment against Defendant awarding DBSP:

A.    Damages in an amount to be determined at trial but not less than $13 million;

B.    Specific performance of the Agreements and Seller Guide;

C.    Attorneys' fees and related costs, and all other costs, fees and expenses that DBSP has incurred, is incurring and will incur in this action in connection with Defendant's failure to observe and perform its obligations under the Agreements and Seller Guide; and

D.    Such other and further relief as the Court may deem just and proper.

8

Dated: New York, New York
       May 25, 2007

THACHER PROFFITT & WOOD LLP

By: _____

John P. Doherty (JD-3275)
Richard F. Hans (RH-0110)
Kerry Ford Cunningham (KF-1825)
Brendan E. Zahner (BZ-8645)
Two World Financial Center
New York, New York 10281
(212) 912-7400

*Attorneys for DB Structured Products, Inc*

9

DEC 06 2005 23:41 FR DEUTSCHE BANK 212 469 7944 TO 917324607159 P.01

NOV 27 2005 08:09 FR TO 917324607159 P.02

# Seller Loan Purchase Agreement

THIS SELLER LOAN PURCHASE AGREEMENT ("*Agreement*") is made and entered into as of the 17th day of [illegible] 2005 by and between Mortgage Corporation of America, Inc. ("*Seller*"), a California Corporation duly organized under the laws of California, having an address at 2815 Lueboer Drive, Suite 115, Simi Valley, CA 93065 and DB STRUCTURED PRODUCTS, INC. ("DBSP"), a corporation duly organized under the laws of the State of Delaware, the principal business address of which is 60 Wall Street, New York, New York 10005, for mutual considerations set forth herein.

RECITALS:

Seller engages in the business of making loans to individuals evidenced by promissory notes payable to Seller and secured by first or second mortgages on residential real property; and

Seller desires to sell to DBSP, and DBSP desires to purchase from Seller, from time to time, certain of these loans on the terms and conditions set forth here and in the Deutsche Bank Correspondent Lending Seller Guide, as amended supplemented or otherwise modified from time to time (the "*Seller Guide*").

NOW, THEREFORE, for and in consideration of the mutual covenants and agreements herein referenced or contained in the Seller Guide, and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto, intending to be legally bound thereby, agree as follows:

1. SELLER GUIDE. DBSP has provided to Seller the Seller Guide. SELLER ACKNOWLEDGES THAT IT HAS RECEIVED AND READ THE SELLER GUIDE PRIOR TO ENTERING INTO THIS AGREEMENT. Seller and DBSP agree to comply with and be bound by all terms of the Seller Guide. All of the terms and conditions of the Seller Guide are incorporated herein by reference and made a part of the Agreement.

2. DEFINITIONS. Capitalized terms in this Agreement not otherwise defined herein are defined in Volume 1 of the Seller Guide.

3. PURCHASE AND SALE OF MORTGAGE LOANS. Seller may from time to time offer Loans for sale to DBSP and DBSP may, from time to time, in its absolute discretion, purchase such Loans from Seller, on the terms and conditions set forth in the Seller Guide, in the applicable Commitments, and in this Agreement.

4. REPRESENTATIONS AND WARRANTIES. Seller reaffirms that all of Seller's representations and warranties set forth in the Seller Guide, including without limitation those set forth in Volume 1 of the Seller Guide, are true and correct. Each of the Seller's representations and warranties: (a) applies to any and all Loans sold to DBSP; (b) shall be deemed to have been relied upon by DBSP regardless of any independent investigation now, heretofore, or hereafter made by DBSP, its officers, directors, employees or agents and regardless of any opportunity for such investigation or review; (c) is for the benefit of DBSP and each of its successors and assigns; (d) shall survive the termination of this Agreement and continue in full force and effect for so long as the Note remains outstanding and for such time as DBSP is subject to any risk of loss or liability as to any Loan purchased from Seller hereunder; and (e) is in addition to any other specific warranties contained elsewhere herein. Seller agrees that its representations and warranties and DBSP's rights to indemnification and to repurchase or payment of Loss apply to all Loans purchased by DBSP hereunder notwithstanding that any Loan was originated by or through any third party originator, including, but not limited to, a mortgage broker or correspondent lender. Seller will not assert the fact that a Loan was originated by a third party originator as a defense to any claim or request by DBSP for indemnification or repurchase or payment of Loss.

5. INDEMNIFICATION. Seller hereby agrees that it will indemnify, defend and forever hold harmless DBSP, its affiliates and parent corporation, and its successors and assigns, and each of its and their respective officers, directors, employees and agents, from and against any and all liabilities, loss, injury or damages, including but not limited to incidental and consequential damages, judgments, damages, claims, demands, actions or proceedings, together with all reasonable costs and expenses relating thereto (including but not limited to legal and accounting fees and expenses), by whomsoever asserted, including but not limited to the claims of: (a) the Borrower with respect to any Loan purchased hereunder; and (b) any person or persons who prosecute or defend any actions or proceedings as representatives of or on behalf of any class or interest group, or any governmental instrumentality, body, agency, department or commission, or any administrative body or agency having jurisdiction pursuant to any applicable statute, rule, regulation, order or decree; or the settlement or compromise of any of the foregoing, arising out of, resulting from or relating to: (i) any breach of any one or more of the representations, warranties, covenants, agreements or other obligations of Seller, irrespective of the ownership of Loans prior to the sale of Loans to DBSP hereunder and including, without limitation, any loss arising from Seller's failure to properly and timely file and record all Security Instruments in all necessary jurisdictions or (ii) any suit, claim, action, proceeding or investigation pending or threatened against DBSP or Seller or affecting any Loan asserting a claim based upon facts that, if proven, would constitute a breach of Seller's representations, warranties, covenants, agreements or obligations and regardless of whether the matter is ultimately successfully concluded.

6. TERMINATION. This Agreement may be terminated at any time by either DBSP or Seller by giving the other party hereto ninety (90) days prior written notice. In the event of Seller's breach of this Agreement, the Seller Guide or any other agreement between DBSP and Seller, or upon the occurrence of an Event of Seller Default as defined in Volume 1 of the Seller Guide, DBSP may immediately, upon notice to Seller via certified mail, terminate this Agreement. Upon the effective date of termination, neither of the parties shall have any further liabilities or obligations to the other party except that such termination shall not affect any liabilities and obligations of either party under sections 5, 7 and 9 or which otherwise relate to Loans transferred by Seller to DBSP prior to the effective date of termination.

7. CONFIDENTIALITY. The parties shall observe the confidentiality requirements set forth in Volume 1 of the Seller Guide. Without limiting the foregoing sentence, Seller shall agree to use the Confidential Information solely for the purpose of the Agreement, will not use the Confidential Information for any other purpose, and will not disclose or communicate the Confidential Information in any manner whatsoever, directly or indirectly, to any third party without the prior written consent of DBSP.

8. RELATIONSHIP OF PARTIES. Seller is not and shall not represent to third parties that it is acting as an agent for or on behalf of DBSP. Seller at all times shall act as an independent contractor.

9. REPURCHASE. Seller agrees to repurchase any Loan subject to this Agreement in accordance with the terms and conditions set forth in Volume 1 of the Seller Guide.

10. INTEGRATION. This Agreement, including the Seller Guide and all other documents incorporated by reference herein, constitute the full and integrated agreement of the parties hereto with respect to the subject matter hereof and the transactions contemplated hereby, and supersedes any and all prior negotiations, commitments, agreements, statements (whether oral or written) and writings made with respect thereto.

11. MODIFICATION. Except for automatic amendments resulting from revisions by DBSP to the Seller Guide, this Agreement may not be amended, varied or altered, nor its provisions waived, except by written agreement of the parties hereto.

12. ASSIGNMENT. DBSP has entered into this Agreement with Seller in reliance on the specific qualifications of Seller; therefore, Seller may not assign or delegate this Agreement or any of its rights or obligations hereunder, whether by operation of law or otherwise, without prior written consent of DBSP.

13. GOVERNING LAW. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York in effect at the time of execution hereof and applicable to agreements executed and performed in New York, without giving effect to the conflict of laws principles thereof. Any suit, action, or proceeding against Seller with respect to this Agreement may be brought in a court of competent jurisdiction in the County of New York, New York or in the United States District Court for the Southern District of New York, as DBSP in its sole discretion may elect, and Seller

consents to the jurisdiction of such courts for the purpose of any such suit, action, or proceeding.

14. BINDING EFFECT. This Agreement shall be binding upon and inure to the benefit of the parties hereto and each of their respective successors and permitted assigns.

15. CHANGE OF CIRCUMSTANCES. DBSP may refuse to purchase any Loan, notwithstanding that DBSP has issued a Commitment with respect to such Loan, if any regulatory agency having jurisdiction over DBSP has determined that such purchase would be unsafe or unsound.

16. SEVERABILITY. If any provision or part of this Agreement is deemed invalid or unenforceable under applicable law, the remainder of this Agreement shall not be affected thereby, and shall be fully enforceable to the extent of the valid portions thereof.

17. WAIVERS. All rights and remedies under this Agreement shall be cumulative and concurrent, and not in the alternative. No delay on the part of DBSP in exercising any right, power or remedy shall operate as a waiver thereof, nor shall any waiver of any right, power or remedy hereunder constitute a waiver of any other rights, powers or remedies hereunder. The acceptance by DBSP of any Loan which could have been rejected shall not constitute a waiver with respect to any other Loan, or with respect to any defect or default under that Loan which is not expressly waived in writing by DBSP.

18. NOT A COMMITMENT. Nothing contained herein shall be deemed or construed to be a commitment from DBSP to purchase any Loans from Seller, or a commitment from Seller to offer any Loans for sale to DBSP.

19. HEADINGS. All article and section headings in this Agreement are inserted for convenience of reference only; they neither form a part of this Agreement nor are to be used in the construction or interpretation hereof.

20. NOTICES. Except as otherwise provided herein, all notices, requests, demands or other communications which are to be given under this Agreement shall be in writing, addressed to the appropriate party and sent via certified United States mail, return receipt requested, or by overnight delivery service to the address set forth in the introductory paragraph to this Agreement, unless another name or address is later substituted.

21. WAIVER OF JURY TRIAL. SELLER AND DBSP HEREBY AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. SELLER AND DBSP ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT FOR EACH SUCH PARTY TO ENTER INTO A BUSINESS RELATIONSHIP AND THAT SELLER AND DBSP HAVE ALREADY RELIED ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS WITH EACH OTHER. SELLER AND DBSP FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed this Agreement as of the day and year first above written.

SELLER: Mortgage Corporation of America, Inc.

By: _____
Signature

Bradley A. Rice
Typed Name

President
Title

DB STRUCTURED PRODUCTS, INC.

By: _____
Signature

MARGOTH PILLA
Typed Name

MANAGING DIRECTOR
Title

By: _____
Signature

MICHAEL SCHOFFELEN
Typed Name

AUTHORIZED SIGNATORY
Title

-7-

**Addendum to Seller Loan Purchase Agreement**
**DB-ASAP**

THIS ADDENDUM TO SELLER LOAN PURCHASE AGREEMENT ("Addendum") is made and entered as of the 2nd day of Dec 2005 by and between MortCorp of Ame ("Seller"), with its principal place of business at 2315 Kuehner Dr.  and DB Structured Products, Inc., a Delaware corporation, with its principal place of business at 60 Wall Street, New York, New York 10005 ("DBSP") and amends, supplements and is incorporated into the Seller Loan Purchase Agreement between DBSP and Seller dated as of Nov. , 2005 and any amendments thereto ("Seller Agreement"). Seller has been approved by DBSP for access to the Software Services System as defined herein and this Addendum sets forth the terms, conditions and consideration pursuant to which Seller, will obtain such access.

Based On The Mutual Covenants contained herein, the parties agree to the following terms:

*Article I - General Agreement Terms*

**1.01** *Definitions.* Unless specifically defined in this Addendum, the capitalized terms shall have the same meanings as in the Seller Agreement.

*"Affiliate"* - With respect to any specified individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof, any other entity controlling or controlled by or under common control with such specified entity. For the purposes of this definition, "control" when used with respect to any specified entity means the power to direct the management and policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

*"Borrower Information"* - All information related to Borrower provided or developed by Borrower, Seller or DBSP, regardless of whether DBSP's or Seller's relationship with the Borrower ceases, including any nonpublic personal information as defined by federal law, including, but not limited to, the Gramm-Leach-Bliley Act, as it may be amended, any regulations promulgated thereunder and any other customer information protected by applicable state law.

*"Confidential Information"* — All Systems Information and Loan Information. Confidential Information shall not include any information that: (a) enters the public domain other than as a result of disclosure by Seller; (b) with the exception of Borrower Information, is known by Seller at the time it is disclosed by DBSP, as shown by Seller's records; (c) with the exception of Borrower Information, is independently developed by Seller at anytime, as shown by Seller's records; or (d) is rightfully obtained by Seller from an independent third party who does not have an obligation of confidentiality to DBSP.

*"Loan"* — A mortgage-secured loan or line of credit to be funded by DBSP.

*"Loan Information"* - All written information provided by DBSP to Seller in connection with DBSP's loan programs, including policies, guidelines, credit criteria, business practices, plans or proposals, all information provided by DBSP to Seller regarding Borrower's transactions which are the subject of this Agreement and Borrower Information.

*"Software"* — The proprietary, copyrighted software product for Loan origination, including, but not limited to, LendTech 2000™ (LT2k™), and any enhancements, modifications, and upgrades thereto of a general nature provided to forms, whether in electronic or other format to which access is provided to Seller by DBSP under this Addendum for the sole purpose of submitting Loan applications to DBSP.

*"Software Services System"* - The computer software product for Loan origination, including, but not limited to, LendTech 2000™ (LT2k™), and the hardware, including ARC Systems™ hardware, on which it operates and any enhancement, modifications, and upgrades thereto, including any product owned or licensed by any third party vendor which contracts with DBSP prior to and during the period services are being rendered by Seller to DBSP under the Seller Agreement.

*"Systems Information"* - Any and all information and materials regarding, relating to, or in connection with the Software, Software Services System and development, marketing, and production activities with respect thereto and all copies or information derived therefrom, including, but not limited to, the Systems Information of Arc Systems™. Systems Information includes, without limitation, trade secrets and know-how, and copyrighted, patented, trademarked, or otherwise protected proprietary information, as applicable, including such information owned or licensed by any third party vendor which contacts with DBSP . Systems Information includes, without limitation, any one or more of the following and the information contained therein: computer program manuals and instruction (of every form and contained on any storage or communication media); computer software (of every form and contained on any storage or communication media); operation sequence information; software related drawings and flow diagrams; software and process specifications; materials specifications; performance specifications; test data; written or otherwise recorded technical assistance; any other data generally known as engineering and operations information; technical information; sales and promotion information; customer engineering; product design and technology including mathematical equations, physical explanations and computer program set up procedures; operations engineering design; operations planning and controlling; Internet or other interface with service provider or its services installation, initialization and start up running procedures; System design documents and drawings; business practices; financial data; maintenance and trouble shooting information; DBSP's lending criteria and loan terms resident on the Software; know how; business plans; information marked "Confidential " by DBSP ; service provider lists, and identification numbers and passwords, including, but not limited to, the master password.

**1.02** *Entire Agreement.* This Addendum contains the final and entire agreement of the parties with respect to the subject matter thereof and all other agreements whether oral or written made with respect to the subject and the transactions contemplated by this Addendum shall have no force or effect. No amendments, supplements or waivers of any provision of this Addendum shall be valid unless by an instrument in writing, signed by authorized representatives of both parties. Except as expressly provided herein, the terms and provisions of the Seller Agreement shall remain in full force and effect. To the extent of any inconsistency between this Addendum and the Seller Agreement, this Addendum shall govern.

*Article II— Requirements for Seller's Access to the Software Services System*

**2.01** *Access to Software Services System; Training; Fees.*
(a) DBSP has approved the Seller for access to the Software Services System. Provided Seller is not in default of any material provisions, conditions or covenants contained in the Seller Agreement or this Addendum, DBSP hereby grants Seller access to the Software for the sole purpose of enabling Seller to submit applications and prequalification inquiries for Loans to DBSP and as governed by this Addendum. DBSP shall make available to Seller such training as is required to access the Software Services System and the Software at the then published training and consulting rates, if any.

(b) Seller shall pay to DBSP fees for use of the Software Services System in accordance with DBSP's fee schedule in effect from time to time. In addition, Seller shall be required to pay the cost of any credit reports obtained from a consumer reporting agency in connection with Seller's use of the Software Services System. DBSP

will invoice Seller for said fees and costs on a monthly basis. Payment will be due within thirty (30) days of each invoice date.

**2.02    *Seller's Agreements***

(a) Seller will access and use the Software Services System solely for the purpose of this Addendum and the Seller Agreement and will not use or permit the access or use of the Software Services System by any of its directors, officers, employees, affiliates, agents, advisors or representatives for any other purpose.

(b) Seller is authorized by Borrower to submit each Loan application and prequalification inquiry.

(c) No copies of screens, manuals, Software, passwords or any proprietary or Confidential Information shall be made available by Seller to any prospective affiliates or other third parties even under a signed confidential disclosure agreement for any reason without the express written permission of DBSP relative to that particular prospective affiliate or third party.

(d) Due to the extremely sensitive nature of Borrower Information provided by Seller, Seller shall verify all data inputted into the Software and shall be obligated to maintain the security of all Borrower Information. Seller is solely responsible for assuring security measures and confidentiality relating to the use of its terminals and the terminals of its affiliates and thereby assure the confidentiality of Borrower Information in accordance with the Gramm-Leach-Bliley Act, as it may be amended, and any regulations promulgated thereunder. Access to the Software Services System from the Seller's location shall be available only through the use of identification numbers and passwords, including the master password assigned and validated by DBSP prior to commencement of Seller's use of the Software Services System. Once such identification numbers, passwords and master password have been assigned by DBSP, the use and confidentiality of such Numbers and passwords shall be the sole responsibility of Seller. DBSP may change the identification numbers, passwords and master password at any time, in its sole discretion. Seller can request a change to the identification numbers, passwords and master password provided that Seller's sole owner or a Partner, President or Vice President of Seller with appropriate authority requests such change in writing.

(e) Seller shall be responsible for inputting all data into the Software Services System and verifying the accuracy of all data and for verifying correct entry of data entered by Seller. In addition, Seller agrees to provide, at a reasonable time and in such format as may be reasonably requested by DBSP, all other data or information required by DBSP to enable the Software Systems to function for its intended purpose, including credit bureau subscriber member codes to set up direct credit report billing. DBSP shall not be responsible for errors in data, data entry or other services, programs, hardware, data files, or output provided to, or maintained for, Seller.

(f) Seller shall be responsible for the safety and condition of any terminal equipment provided by DBSP to Seller, and shall have full responsibility for establishing and maintaining the telephone communication lines and equipment necessary to transmit data between the Seller and the Software Services System. Seller shall be solely responsible for purchase or lease, installation, maintenance, and performance of its system which includes its software and equipment necessary to render, within reasonable business standards, data processing services specified in this Addendum to Seller via Internet access.

(g) Seller agrees that no appraisal or title company controlling, controlled by, or under common control with Seller shall be used in connection with the closing of any Loan.

**2.03    *Proprietary Rights.*** Seller acknowledges that it shall obtain no proprietary rights in the hardware, software, specifications, storage media, or documentation used or made available to Seller under this Addendum, whether those materials are developed or purchased specifically for performance of this Addendum or otherwise. Seller hereby assigns all intellectual property rights if any that may be developed by any third party vendor which contracts with DBSP or jointly by any third party vendor, DBSP and Seller in the course of performing this Addendum. Seller acknowledges that

those programs, specifications, and documentation are not the property of Seller and agrees to keep them confidential and not to disclose or divulge them to any third party. Seller agrees to keep any property supplied to Seller under this Addendum free and clear of all claims, liens, and encumbrances. The provisions of this paragraph shall survive the termination of the Agreement. In the event that Seller breaches or attempts to breach any of the provisions of this Section 2.03, the parties agree that this will cause irreparable damage to DBSP, and accordingly, Seller agrees that DBSP or its assignee shall be entitled as a matter of right to an injunction out of any court of competent jurisdiction restraining any breach or attempted breach of this Addendum. DBSP or its assignee shall have the right, in addition to any other remedies that may be available to it, to injunctive relief enjoining the breach or attempt to breach. For this purpose, it is expressly acknowledged by the parties that legal remedies alone are inadequate.

**2.04    *Confidentiality***

(a) All Confidential Information shall be held in the strictest confidence and will not be disclosed by the Seller or its directors, officers, employees, affiliates, agents, advisors or representatives (collectively, the "*Representatives*"), except as specifically permitted by the terms hereof. Seller and its Representatives will use the Confidential Information solely for the purpose of the Addendum, will not use the Confidential Information for any other purpose, and will not disclose or communicate the Confidential Information in any manner whatsoever, directly or indirectly, to any third party without the prior written consent of DBSP, unless disclosure is permitted under Section 2.04(c). Seller further agrees that the Confidential Information will be disclosed only to such of its Representatives who need to examine the Confidential Information for the purposes described in this Section 2.04. Seller shall in any event be responsible for any breach of this Agreement by any Representative.

(b) All Confidential Information shall remain the exclusive property of DBSP. Upon request by DBSP, Seller shall promptly surrender to them any of the Confidential Information in the Seller's possession, and shall surrender all Confidential Information to DBSP promptly and without request upon termination of the Agreement. Seller will not retain any copies of the Confidential Information, subject, however, to any requirement under applicable law that Seller retain copies of Borrower Information.

(c) Borrower Information shall be held in strictest confidence by Seller and used only for the purposes authorized by the Borrower's relationship with the Seller; provided, however that: (i) until DBSP has approved the Loan and the Borrower has accepted the offer of credit, Seller can disclose Borrower Information to third parties as permitted by Borrower, and (ii) Seller may disclose Borrower Information relating to a Loan if requested or required by Seller's regulatory authority.

**2.05    *Assignment.*** Seller may not assign, sublicense or delegate, whether by operation of law or otherwise, this Addendum and the rights and obligations thereunder, without prior written consent of DBSP which consent may be withheld in DBSP's sole and arbitrary discretion and subject to the requirement that Seller enter into a written contract that limits any such person's use and disclosure of the Confidential Information, including any Borrower Information, as defined in Section 1.01 of this Addendum. DBSP may assign its rights and benefits and delegate its duties and obligations to its Affiliates.

**2.06    *Disclaimer of Warranty.*** DBSP warrants that it is authorized to permit Seller to access the Software Services System and the Software, and that Seller's access to and use of the Software Services System will not infringe the copyright or intellectual property rights of any third party whose consent to such use has not been obtained by DBSP. THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. DBSP MAKES NO WARRANTY,

-2-

DEC 06 2005 23:44 FR DEUTSCHE BANK   212 469 7944 TO 917324607159   P.05

EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SOFTWARE SERVICES SYSTEM OR THE SOFTWARE. DBSP SHALL NOT BE OTHERWISE RESPONSIBLE (IN WHOLE OR IN PART) FOR LOST, DAMAGED, OR DESTROYED PROGRAMS, DATA, DATA FILES, BACK-UP DATA, STORAGE MEDIA OR OUTPUT, OR FOR ANY COSTS, EXPENSES OR DAMAGES INCURRED OR SUSTAINED IN THAT REGARD, INCLUDING WITHOUT LIMITATION BUSINESS INTERRUPTION, DAMAGES. EXCEPT FOR DBSP'S OBLIGATION TO INDEMNIFY SELLER UNDER SECTION 2.07(b), UNDER NO CIRCUMSTANCES SHALL DBSP BE LIABLE FOR ANY INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY KIND WHATSOEVER SUSTAINED BY SELLER, OR FOR ANY CLAIM MADE AGAINST SELLER BY ANY OTHER PARTY EVEN IF DBSP HAS BEEN ADVISED OF THE CLAIM OR POTENTIAL CLAIM. THESE EXCLUSIONS SHALL APPLY REGARDLESS OF THE FORM OF ACTION, WHETHER IN COURT OR ARBITRATION, CONTRACT OR TORT, INCLUDING MISREPRESENTATION, NEGLIGENCE, AND GROSS NEGLIGENCE.

**2.07   Indemnification**

(a) Seller shall indemnify, defend and hold harmless DBSP, its Affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors and/or assigns, from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses actually incurred) by whomsoever asserted, including but not limited to the claims of any third party vendor which may arise or be incurred as a result of Seller's access to or use of the Software Services System, or any action or inaction by Seller under this Addendum, including, but not limited to, a breach of any covenant, condition, representation or warranty arising under this Addendum, except as such damage, loss, liability, cost, action, cause of action, claim, demand or expense is caused solely by the negligence or willful misconduct of DBSP.

(b) DBSP shall indemnify, defend and hold harmless Seller, its affiliates and parent corporation, and their respective directors, officers, agents, and employees, successors and/or assigns, from and against any and against all damage, loss, liability, cost, actions, causes of action, claims, demands or expense both direct and indirect (including without limitation reasonable legal and accounting fees and expenses) by whomsoever asserted; which may arise or be incurred as a result of a claim by a party that the Software Services System used within the scope of this Addendum infringes any copyright or intellectual property right of any third person, subject to the limitation of liability included in Section 2.06, and provided further that Seller notifies DBSP promptly of the claim, actual or threatened, and DBSP may participate fully at its expense in the defense of the claim.

*Article III – Termination of Addendum*

**3.01   Termination**

(a) Upon the occurrence of an "*Event of Default*" as defined in this Section, without prejudicing any right or remedy it may have against Seller or otherwise in the sole discretion of DBSP, DBSP may terminate this Addendum and Seller's permission to use the Software Services System effective on Seller's receipt of written notice of termination from DBSP to Seller.

(b) The occurrence of any of the following shall constitute an *Event of Default*: (i) Seller shall fail or omit to perform or observe any obligation under this Addendum made by Seller, provided that if, in DBSP's judgment, the failure or omission is capable of being cured, the failure or omission shall not have been fully corrected within 30 days after the giving of written notice to Seller that it is to be remedied; or (ii) upon termination of the Seller Agreement.

**3.02   Survival**

The rights and obligations of the parties under this Addendum which by their nature survive the termination or completion of the Seller Agreement, including but not limited to the following, shall remain in full force: Entire Agreement; Seller's Access to the Software Services System; Proprietary Rights; Confidentiality; Assignment; Disclaimer of Warranty; and Indemnification.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have executed this Addendum as of the day and year first above written.

SELLER: _Mortgage Corp of America_

By: _[signature]_
      Signature

_BRADLEY RICE_
Typed Name

_PRESIDENT_
Title

DB STRUCTURED PRODUCTS, INC.

By: _[signature]_
      Signature

**MARGOTH PILLA**
Typed **MANAGING DIRECTOR**

Title

By: _[signature]_
      Signature

Typed **MICHAEL SCHOFFELEN**
**AUTHORIZED SIGNATORY**

Title

-3-



**Mortgage Corp**
OF AMERICA

April 4, 2007

Maxine Matteo
Margoth Pilla
Michael Schoffelen
Deutsche Bank
6000 Broken Sound Parkway, Suite 104
Boca Raton, FL 33487

To those of concern,

Pursuant to our Mortgage Loan Purchase Agreement dated November 17, 2005, please accept this letter as notice of termination of relationship between Mortgage Corporation of America, Inc. and Deutsche Bank effective 90 days from the date of this letter as required notice period in Section 6.

Thank you for the opportunity to have done business with you. Please feel free to contact me with any questions or comments.

Sincerely,

Bradley Rice
CEO

4277 Valley Fair St., Simi Valley, CA 93063  (805)582-2220

**Exhibit A — Mortgage Corp/Zone Repurchase Schedule**

Settlement Date ...

| | |
|---|---|
| # of Loans | 38 |
| Unpaid Principal Balance | 12,341,547.66 |
| at Price | 12,608,953.23 |
| Advances | |
| Accrued Interest | 476,677.02 |
| **Repurchase Settlement due DB** | |

| Loan Number | Current Balance | Paid To/Next Due | Maturity | Note Rate | Days | Accrued Interest | Price % | Price $ | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| 111763162 | 220,000.00 | 10/01/08 | 04/30/2007 | 7.500% | 209 | $ 18,287.50 | 100.000% | $ 423,740.03 | $ 442,181.56 |
| 111763163 | 14,770.76 | 01/01/07 | 04/30/2007 | 12.990% | 209 | 7,530.17 | 96.242% | 170,673.70 | 111,606.80 |
| 113351728 | 193,371.39 | 01/01/07 | 04/30/2007 | 10.630% | 119 | 6,794.69 | 103.125% | 199,124.13 | 206,918.68 |
| 113081622 | 530,400.00 | 02/01/07 | 04/30/2007 | 8.550% | 89 | 2,311.35 | 103.125% | 546,975.00 | 668,199.33 |
| 113350625 | 132,504.00 | 11/01/08 | 04/30/2007 | 9.380% | 179 | 7,240.69 | 102.625% | 132,557.82 | 139,823.30 |
| 113351825 | 580,000.00 | 02/01/07 | 04/30/2007 | 8.280% | 239 | 30,820.38 | 102.625% | 674,700.00 | 605,520.38 |
| 113385482 | 138,743.35 | 09/01/08 | 04/30/2007 | 11.815% | 149 | 6,833.59 | 102.125% | 149,022.71 | 148,926.30 |
| 112386496 | 448,000.00 | 07/01/07 | 04/30/2007 | 8.600% | 119 | 12,667.55 | 103.125% | 480,032.91 | 475,257.55 |
| 113395819 | 651,635.60 | 01/01/07 | 04/30/2007 | 9.000% | 179 | 10,082.28 | 102.875% | 668,046.70 | 688,098.03 |
| 113351729 | 137,932.37 | 11/01/08 | 04/30/2007 | 12.760% | 179 | 20,744.37 | 102.875% | 142,038.37 | 160,760.74 |
| 113351857 | 12845 | 12/01/08 | 04/30/2007 | 6.325% | 89 | 18,475.10 | 102.313% | 539,165.68 | 557,630.65 |
| 113312237 | 823,610.08 | 12/01/08 | 04/30/2007 | 12.760% | 149 | 8,515.59 | 102.313% | 131,382.69 | 139,342.42 |
| 113315355 | 130,973.40 | 12/01/08 | 04/30/2007 | 7.250% | 99 | 8,946.32 | 102.000% | 361,100.62 | 387,443.68 |
| 113767903 | 157,348.24 | 01/01/07 | 04/30/2007 | 8.860% | 119 | 9,098.91 | 102.875% | 128,415.72 | 182,654.05 |
| 113381731 | 100,038.24 | 02/01/07 | 04/30/2007 | 6.500% | 89 | 2,854.32 | 99.940% | 547,954.00 | 679,691.08 |
| 112086591 | 538,000.00 | 02/01/07 | 04/30/2007 | 7.250% | 289 | 23,037.08 | 102.174% | 101,097.71 | 105,727.06 |
| 111936591 | 100,083.44 | 12/01/08 | 04/30/2007 | 11.250% | 149 | 4,560.14 | 100.983% | 194,599.76 | 197,165.20 |
| 111935592 | 178,266.60 | 03/01/07 | 04/30/2007 | 8.600% | 89 | 2,860.42 | 102.979% | 380,929.85 | 378,920.65 |
| 111361700 | 347,920.00 | 10/01/08 | 04/30/2007 | 8.990% | 209 | 17,380.67 | 102.889% | 97,279.06 | 91,600.01 |
| 113412234 | 99,982.99 | 01/01/08 | 04/30/2007 | 11.830% | 59 | 6,870.05 | 101.760% | 659,912.43 | 696,471.33 |
| 112088073 | 549,967.65 | 07/01/08 | 04/30/2007 | 6.600% | 59 | 6,859.90 | 100.000% | 137,732.34 | 139,804.97 |
| 112089810 | 157,732.34 | 03/01/07 | 04/30/2007 | 9.025% | 59 | 2,172.63 | 101.852% | 238,673.45 | 280,427.25 |
| 113726007 | 234,986.00 | 12/01/08 | 04/30/2007 | 8.000% | 149 | 10,916.79 | 103.135% | 1,044,460.00 | 1,054,981.71 |
| 113726913 | 1,012,000.00 | 02/01/07 | 04/30/2007 | 8.200% | 89 | 20,745.37 | 100.083% | 283,368.25 | 271,832.07 |
| 113385491 | 283,200.00 | 06/01/08 | 04/30/2007 | 10.990% | 239 | 19,473.32 | 100.000% | 280,539.69 | 283,452.24 |
| 113726491 | 495,841.05 | 11/01/08 | 04/30/2007 | 0.195% | 179 | 20,108.85 | 102.500% | 124,678.00 | 124,070.00 |
| 113395643 | 123,366.18 | 11/01/08 | 04/30/2007 | 11.385% | 179 | 7,004.95 | 100.300% | 358,373.21 | 385,373.21 |
| 113395848 | 325,000.00 | 07/01/08 | 04/30/2007 | 7.850% | 299 | 21,763.21 | 102.527% | 90,479.92 | 93,479.50 |
| 113416300 | 82,292.72 | 12/01/08 | 04/30/2007 | 12.250% | 149 | 9,385.36 | 103.109% | 92,109.36 | 95,109.38 |
| 113416303 | 274,342.88 | 11/01/08 | 04/30/2007 | 6.600% | 149 | 9,450.45 | 102.250% | 527,030.00 | 548,538.11 |
| 111763140 | 512,000.00 | 12/01/08 | 04/30/2007 | 6.000% | 179 | 21,053.11 | 100.989% | 120,065.58 | 120,065.58 |
| 111763141 | 127,928.35 | 11/01/08 | 04/30/2007 | 12.000% | 179 | 7,932.34 | 100.989% | 461,984.92 | 463,897.61 |
| 113085694 | 440,000.00 | 10/01/08 | 04/30/2007 | 7.750% | 179 | 14,113.61 | 103.391% | 110,001.19 | 115,407.47 |
| 113085828 | 99,982.99 | 11/01/08 | 04/30/2007 | 11.750% | 179 | 6,406.28 | 103.109% | 723,856.60 | 746,782.31 |
| 113085831 | 700,000.00 | 11/01/08 | 04/30/2007 | 6.300% | 149 | 22,105.01 | 100.709% | 199,862.59 | 212,813.27 |
| 111737579 | 188,444.58 | 10/01/08 | 04/30/2007 | 11.250% | 239 | 9,359.98 | 100.709% | 286,307.01 | 274,887.59 |
| 111703282 | 259,675.27 | 01/01/07 | 04/30/2007 | 10.500% | 119 | 8,359.98 | 88.330% | 684,497.48 | 634,469.48 |
| 111937632 | 671,506.35 | 11/01/08 | 04/30/2007 | 7.875% | 119 | 22,361.98 | 102.260% | 152,833.22 | 155,233.22 |
| 113557123 | 142,398.38 | 11/01/08 | 04/30/2007 | 12.875% | 179 | 8,162.33 | 100.500% | 143,861.19 | 143,861.19 |
| | 12,341,547.66 | | | | | $ 476,677.02 | | | 13,086,931.08 |

**Deutsche Bank Wire Instructions:**

| | |
|---|---|
| Bank: | Bank of New York |
| ABA#: | 021-000-018 |
| Acct.#: | GLA 111689 |
| Beneficiary: | DPX |
| Attn: | Daniel H Kim |
| Ref: | Mortgage Corp / Zone Funding EPD |



Thacher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281
212.912.7400

Fax: 212.912.7751
www.tpw.com

April 26, 2007

<u>By Federal Express and Certified Mail — Return Receipt Requested</u>

Mortgage Corporation of America, Inc.
d/b/a Zone Funding
Attn: Bradley A. Rice
2315 Kuehner Drive, Suite 115
Simi Valley, CA 93063

> Re:   Seller Loan Purchase Agreement dated as of November 17, 2005, as amended, between DB Structured Products, Inc. and Mortgage Corporation of America, Inc., d/b/a Zone Funding ("Mortgage Corporation")

Dear Mr. Rice:

Our firm has been retained as litigation counsel by DB Structured Products, Inc. ("DBSP") in connection with the Seller Loan Purchase Agreement dated as of November 17, 2005, as amended ("Agreement") between DBSP and Mortgage Corporation, and in connection with certain letter agreements between DBSP and Mortgage Corporation (the "Commitment Letters," and together with the Agreement, the "Agreements"). Capitalized terms used herein and not defined have the meanings set forth in the Agreements.

DBSP hereby demands immediate payment of the amount of $13,088,631.05 (the "Repurchase Price") which is due and owing to DBSP by Mortgage Corporation in connection with Mortgage Corporation's obligation to repurchase the mortgage loans listed on Exhibit A attached hereto (the "Mortgage Loans") pursuant to the Agreements. The Mortgage Loans are in early payment default, as specifically set forth in the Commitment Letters.

Please remit the Repurchase Price by wire transfer to the following bank account no later than May 10, 2007:

| | |
|---|---|
| Bank: | Bank of New York |
| ABA: | 021000018 |
| Acct. #: | GLA/111569 |
| Acct. Name: | DPX |
| Attn.: | Ken Glover |
| Re: | Mortgage Corporation Repurchase |

Page 2

If you fail to remit the Repurchase Price by that date, please be advised that DBSP will commence formal legal action against Mortgage Corporation to recover the amounts owed without further notice.

Nothing contained in this letter shall constitute a waiver of any of DBSP's rights or remedies under the Agreements, at law or in equity. Nor shall this letter be construed as a waiver of any Event of Default by Mortgage Corporation under the Agreements.

Please call me or Steven Paolini, Esq., Vice President and Counsel, Deutsche Bank AG, at (212) 250-0382 should you have any questions or wish to discuss this matter.

Very truly yours,

John P. Doherty

cc:    Steven Paolini, Esq.

Encl.

2

| # of Loans | 39 |
|---|---|
| Unpaid Principal Balance at Price | 12,241,847.66 |
|  | 12,600,983.23 |
| Accrued Interest | 479,877.82 |

| Loan Number | UPB at Price | Maturity Date | Cut Date | Net Rate | Days Accrued | Accrued Interest | Price | Price Proceeds | Settlement Date |
|---|---|---|---|---|---|---|---|---|---|
| 29405 | $ 420,000.00 | 10/01/06 | 04/30/07 | 7.600% | 209 | $ 18,287.50 | 97.50 | $ 423,174.00 | $ 442,081.50 | 02/16/06 |
| 29407 | $ 104,770.76 | 10/01/06 | 04/30/07 | 12.880% | 209 | $ 7,534.17 | 99.42% | $ 103,976.32 | $ 111,506.68 | 02/16/06 |
| 12573 | $ 193,371.39 | 01/01/07 | 04/30/07 | 10.830% | 119 | $ 6,764.87 | 102.875% | $ 198,124.19 | $ 205,913.86 | 10/05/06 |
| 1000018559 | $ 530,400.00 | 02/01/07 | 04/30/07 | 6.850% | 89 | $ 11,211.33 | 103.125% | $ 546,975.00 | $ 669,180.33 | 09/18/06 |
| 1000018560 | $ 132,504.80 | 01/01/07 | 04/30/07 | 10.490% | 179 | $ 7,246.69 | 100.083% | $ 132,687.82 | $ 139,928.30 | 09/18/06 |
| 1000018589 | $ 560,000.00 | 09/01/06 | 04/30/07 | 8.230% | 239 | $ 30,620.39 | 102.625% | $ 574,700.00 | $ 605,320.39 | 09/21/06 |
| 1000018567 | $ 138,743.35 | 12/01/06 | 04/30/07 | 11.616% | 149 | $ 6,633.59 | 100.250% | $ 140,922.71 | $ 476,257.35 | 09/15/06 |
| 1000018557 | $ 449,000.00 | 01/01/07 | 04/30/07 | 8.500% | 119 | $ 12,607.85 | 102.081% | $ 462,701.00 | $ 658,090.03 | 10/06/06 |
| 12846 | $ 551,635.80 | 01/01/07 | 04/30/07 | 9.900% | 119 | $ 18,052.29 | 102.675% | $ 568,046.79 | $ 190,760.74 | 10/06/06 |
| 12647 | $ 137,932.87 | 11/01/06 | 04/30/07 | 12.750% | 179 | $ 8,744.37 | 102.675% | $ 142,038.37 | $ 657,630.60 | 09/22/06 |
| 1000027237 | $ 523,510.68 | 12/01/06 | 04/30/07 | 6.825% | 149 | $ 6,411.58 | 102.989% | $ 539,155.50 | $ 138,284.27 | 09/22/06 |
| 1000021239 | $ 130,571.40 | 12/01/06 | 04/30/07 | 8.650% | 149 | $ 6,345.32 | 100.313% | $ 131,382.89 | $ 387,445.85 | 11/10/06 |
| 1000027868 | $ 354,000.22 | 01/01/07 | 04/30/07 | 7.250% | 89 | $ 8,099.81 | 102.000% | $ 381,102.72 | $ 199,716.84 | 10/30/06 |
| 13098 | $ 197,342.29 | 01/01/07 | 04/30/07 | 9.860% | 119 | $ 6,584.22 | 102.876% | $ 102,915.73 | $ 112,264.05 | 04/19/06 |
| 1000020092 | $ 110,038.24 | 09/01/06 | 04/30/07 | 9.650% | 239 | $ 8,584.33 | 99.840% | $ 109,899.73 | $ 576,891.06 | 03/21/06 |
| 10084001 | $ 638,000.00 | 08/01/06 | 04/30/07 | 7.230% | 289 | $ 28,057.08 | 101.174% | $ 547,254.00 | $ 148,671.29 | 03/21/06 |
| 10084002 | $ 99,364.44 | 12/01/06 | 04/30/07 | 9.800% | 149 | $ 4,050.14 | 100.693% | $ 101,057.71 | $ 105,727.85 | 10/06/05 |
| 13069 | $ 347,720.00 | 10/01/06 | 04/30/07 | 9.005% | 209 | $ 2,685.42 | 102.866% | $ 184,859.76 | $ 187,105.20 | 10/06/05 |
| 1000022872 | $ 86,952.39 | 01/01/07 | 04/30/07 | 11.630% | 209 | $ 5,670.05 | 102.979% | $ 87,875.63 | $ 375,229.65 | 03/29/06 |
| 1000022873 | $ 172,368.20 | 12/01/06 | 04/30/07 | 6.500% | 89 | $ 6,400.60 | 101.750% | $ 658,671.43 | $ 53,450.01 | 11/18/06 |
| 1000022910 | $ 549,997.66 | 03/01/07 | 04/30/07 | 6.500% | 89 | $ 17,380.57 | 101.730% | $ 139,004.57 | $ 139,004.57 | 11/18/05 |
| 1000022912 | $ 137,732.34 | 03/01/07 | 04/30/07 | 9.625% | 89 | $ 2,172.83 | 103.891% | $ 137,732.34 | $ 239,573.45 | 11/15/05 |
| 1000001951 | $ 234,985.00 | 10/01/06 | 04/30/07 | 5.000% | 209 | $ 10,473.82 | 103.125% | $ 239,573.45 | $ 1,054,081.71 | 08/15/07 |
| 1000001958 | $ 1,012,000.00 | 02/01/07 | 04/30/07 | 10.900% | 89 | $ 20,631.71 | 103.125% | $ 1,044,450.00 | $ 271,832.07 | 08/15/07 |
| 1000010587 | $ 253,520.00 | 01/01/07 | 04/30/07 | 8.000% | 89 | $ 16,473.82 | 102.000% | $ 263,368.25 | $ 528,449.04 | 09/29/09 |
| 1000019587 | $ 483,941.08 | 11/01/06 | 04/30/07 | 10.960% | 179 | $ 22,106.65 | 102.500% | $ 606,939.59 | $ 397,483.62 | 09/29/09 |
| 1000022874 | $ 123,909.15 | 11/01/06 | 04/30/07 | 8.156% | 179 | $ 7,004.85 | 100.500% | $ 124,675.69 | $ 608,471.43 | 02/17/06 |
| 1000022875 | $ 328,000.00 | 07/01/06 | 04/30/07 | 11.368% | 289 | $ 21,763.21 | 102.127% | $ 328,610.72 | $ 80,479.02 | 02/16/06 |
| 28932 | $ 82,282.72 | 07/01/06 | 04/30/07 | 7.550% | 289 | $ 4,889.88 | 99.840% | $ 82,106.03 | $ 281,189.34 | 09/11/06 |
| 28853 | $ 274,342.88 | 12/01/06 | 04/30/07 | 11.250% | 149 | $ 12,663.91 | 102.200% | $ 281,815.59 | $ 139,436.33 | 09/15/06 |
| 1000018583 | $ 389,715.27 | 12/01/06 | 04/30/07 | 8.000% | 149 | $ 7,582.64 | 102.869% | $ 527,200.00 | $ 546,839.11 | 09/16/06 |
| 1000018581 | $ 489,444.85 | 11/01/06 | 04/30/07 | 8.500% | 179 | $ 21,539.11 | 102.869% | $ 123,006.38 | $ 139,436.33 | 09/15/06 |
| 1000018582 | $ 105,682.29 | 11/01/06 | 04/30/07 | 12.000% | 179 | $ 7,582.64 | 103.695% | $ 491,894.06 | $ 406,807.91 | 02/17/06 |
| 28932 | $ 440,000.00 | 12/01/06 | 04/30/07 | 7.760% | 149 | $ 8,405.28 | 103.688% | $ 461,084.05 | $ 495,084.05 | 02/17/06 |
| 28853 | $ 105,682.29 | 12/01/06 | 04/30/07 | 11.316% | 149 | $ 6,405.28 | 100.316% | $ 117,447.47 | $ 723,156.60 | 03/03/06 |
| 30173 | $ 700,000.00 | 12/01/06 | 04/30/07 | 7.930% | 149 | $ 21,655.81 | 103.208% | $ 723,156.60 | $ 746,782.21 | 03/03/06 |
| 30174 | $ 166,444.89 | 10/01/06 | 04/30/07 | 11.280% | 209 | $ 12,893.81 | 102.070% | $ 169,882.39 | $ 212,413.27 | 03/03/06 |
| 1000023387 | $ 269,875.27 | 01/01/07 | 04/30/07 | 10.500% | 119 | $ 9,359.88 | 105.000% | $ 285,307.61 | $ 274,467.49 | 10/13/05 |
| 1000024587 | $ 47,606.35 | 11/01/06 | 04/30/07 | 7.875% | 179 | $ 22,361.68 | 99.380% | $ 88,390% | $ 608,945.48 | 10/12/05 |
| 1000024586 | $ 142,898.38 | 11/01/06 | 04/30/07 | 12.876% | 179 | $ 9,162.33 | 100.500% | $ 143,881.18 | $ 152,053.32 | 10/16/06 |
|  | $ 12,241,847.66 | | | | | $ 479,577.82 | | | $ 13,080,861.05 | |

Deutsche Bank Wire Instructions:

Bank: Bank of New York
ABA#: 021-000-018
Acct#: GLA 111669
Beneficiary: DPX
Attn: Daniel H Kim
Ref: Mortgage Corp / Zone Funding EPD

# EXHIBIT  B

B 151 — Affidavit of Service of Summons or Subpoena; Personal or Alternative Methods; Corp. or Ind.; Military Service, 10 pt. type, 1-95

© 1986 JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

| | |
|---|---|
| **COURT** | UNITED STATES DISTRICT COURT |
| COUNTY OF | SOUTHERN DISTRICT OF NEW YORK |

DB STRUCTURED PRODUCTS, INC.

*Plaintiff(s)*

*against*

MORTGAGE CORPORATION OF AMERICA, INC., D/B/A ZONE FUNDING

*Defendant(s)*

*Index No.* 07 CV 4106

**AFFIDAVIT OF
SERVICE OF SUMMONS
(AND COMPLAINT)
SEE ATTACHED RIDER**

STATE OF ~~NEW YORK~~ CALIFORNIA, COUNTY OF LOS ANGELES    SS.: The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides ~~at~~ IN THE STATE OF FLORIDA

That on    6/5/07    at    10:55AM., at    4277 VALLEY FAIR STREET, SIMI VALLEY, CA 93063 deponent served the within summons, *and complaint on* MORTGAGE CORPORATION OF AMERICA, INC. defendant therein named.
SEE ATTACHED RIDER    D/B/A ZONE FUNDING, BY SERVING BRADLEY
ALBERT RICE, REGISTERED AGENT

**INDIVIDUAL 1. ☒** by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.

**CORPORATION 2. ☐** a    corporation, by delivering thereat a true copy *of each* to personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be    thereof.

**SUITABLE AGE PERSON 3. ☐** by delivering thereat a true copy *of each* to    a person of suitable age and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC. 4. ☐** by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place—usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4 5A. ☐** Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at    and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4 5B. ☐** Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class post paid envelope properly addressed to defendant at defendant's actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

**DESCRIPTION USE WITH 1, 2, OR 3 ☒**

| | | | | | |
|---|---|---|---|---|---|
| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☐ Balding | ☒ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☒ 5'9"-6'0" | ☒ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

**USE IN NYC CIVIL CT. ☐** The words "CONSUMER CREDIT TRANSACTION" were prominently displayed at the top of the summons(es) and the additional legend was printed in not less than 12 point bold upper case type on the summons(es) pursuant to 22 NYCRR §208.6(d) and (f).

**MILITARY SERVICE ☐** I asked the person spoken to whether recipient was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. Recipient *wore ordinary civilian clothes and no military uniform.* The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the recipient is not in military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Sworn to before me on
SEE ATTACHED JURAT

PRINT NAME BENEATH SIGNATURE
DOUGLAS MACDONALD

License No. *VENTURA #283*

INSTRUCTIONS: Check appropriate boxes and fill in blanks. Delete inappropriate italicized language and military service allegation if not applicable.

## CALIFORNIA JURAT WITH AFFIANT STATEMENT

State of California

County of _Los Angeles_ } ss.

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____
  Signature of Document Signer No. 1          Signature of Document Signer No. 2 (if any)

Subscribed and sworn to (or affirmed) before me on this

_13_ day of _June_, _2007_, by
  Date       Month            Year

(1) _Douglas Alan MacDonald_
              Name of Signer

**ANDIE BA HOANG**
Commission # 1566438
Notary Public - California
Los Angeles County
My Comm. Expires Apr 2, 2009

☑ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me (.) (,)
                                          (and

(2) _____,
              Name of Signer

☐ Personally known to me
☐ Proved to me on the basis of satisfactory evidence
to be the person who appeared before me.)

_____
Signature of Notary Public

Place Notary Seal Above

———— **OPTIONAL** ————

*Though the information below is not required by law, it may prove*
*valuable to persons relying on the document and could prevent*
*fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

| RIGHT THUMBPRINT OF SIGNER #1 | RIGHT THUMBPRINT OF SIGNER #2 |
|---|---|
| Top of thumb here | Top of thumb here |

©2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5910   Reorder: Call Toll-Free 1-800-876-6827

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X Case No. 07 CV 4106
DB STRUCTURED PRODUCTS, INC.,

                    Plaintiff,
                                              RIDER TO AFFIDAVIT
        - against -                              OF SERVICE


MORTGAGE CORPORATION OF AMERICA
D/B/A ZONE FUNDING,

                    Defendant.
------------------------------------X

List of Documents served:


    1. Summons In A Civil Case;

    2. Complaint;

    3. Disclosure Statement Pursuant To Federal Rule Of Civil
       Procedure 7.1;

    4. Civil Cover Sheet;

    5. Individual Practices of Judge Denise L. Cote;

    6. Individual Rules Of Practices Of Magistrate Judge
       Kevin Nathaniel Fox;

    7. Procedures For Electronic Case Filing;

    8. Guidelines For Electronic Case Filing; and

    9. 3rd Amended Instructions For Filing An Electronic Case
       Or Appeal.

# EXHIBIT  C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

              Plaintiff,

      -against-

MORTGAGE CORPORATION OF AMERICA,
INC., d/b/a ZONE FUNDING

              Defendant.

**ECF CASE**

**07 Civ. 4106 (UA/DLC)**

**CLERK'S CERTIFICATE**

     I, J. MICHAEL MCMAHON, Clerk of the United States District Court for the Southern District of New York, do hereby certify that this action commenced on May 25, 2007 with the filing of a Complaint; a copy of the Summons and Complaint was served on Defendant Mortgage Corporation of America, d/b/a Zone Funding on June 5, 2007 by serving Defendant's registered agent, Bradley Albert Rice, 4277 Valley Fair Street, Simi Valley, CA 93063; and proof of such service was filed on June 18, 2007.

     I further certify that the docket entries indicate that the Defendant has not filed an answer or otherwise moved with respect to the Complaint herein. The default of the Defendant is hereby noted.

Dated: New York, New York

    8/16/07

                           **J. MICHAEL MCMAHON**
                              Clerk of the Court

             By:                                 
                      Deputy Clerk

# EXHIBIT  D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DB STRUCTURED PRODUCTS, INC. | **ECF CASE** |
| Plaintiff, | **07 Civ. 4106 (DLC)** |
| -against- | **<u>STATEMENT OF DAMAGES</u>** |
| MORTGAGE CORPORATION OF AMERICA, INC., d/b/a ZONE FUNDING | |
| Defendant. | |

Principal amount sued for ............................................................................$13,088,631.05

Interest at $3,023.93 per diem from 04/30/07 through 09/14/07 (138 days)....... $417,302.34

Attorneys' fees and costs ................................................................................$10,828.17

Total (as of September 14, 2007)................................................................. $13,516,761.56

# EXHIBIT  E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DB STRUCTURED PRODUCTS, INC.

                   Plaintiff,

          -against-

MORTGAGE CORPORATION OF AMERICA,
INC., d/b/a ZONE FUNDING

               Defendant.

**ECF CASE**

**07 Civ. 4106 (DLC)**

## DEFAULT JUDGMENT

    This action having been commenced on May 25, 2007 by the filing of the Complaint, and a copy of the (i) Complaint; (ii) Summons; (iii) Statement Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure; (iv) Civil Cover Sheet; (v) Individual Practices of Judge Denise Cote; (vi) Individual Rules of Practice of Judge Kevin Nathaniel Fox; (vii) 3rd Amended Instructions For Filing An Electronic Case or Appeal; (viii) Procedures for Electronic Case Filing; and (ix) Guidelines for Electronic Case Filing having been properly served on the defendant, Mortgage Corporation of America, d/b/a Zone Funding ("Defendant") on June 5, 2007 by personally serving Defendant's registered agent, Bradley Albert Rice, 4277 Valley Fair Street, Simi Valley, CA 93063, and a proof of service having been filed on June 18, 2007, and the Defendant not having answered the Complaint, and the time for answering the Complaint having expired, it is

    **ORDERED** that Plaintiff have judgment against Defendant in the liquidated amount of $13,088,631.05 with interest at $3,023.93 per diem from 04/30/07 through 09/14/07 amounting

2

to $417,302.34, and attorneys' fees and costs in the amount of $10,828.17, amounting in all to $13,516,761.56; and it is further

**ORDERED** that within thirty (30) days following payment in full of the amount awarded by this Default Judgment, Plaintiff shall return to Defendant the Mortgage Loans[2] as set forth in the Purchase Agreement.

Dated: New York, New York

_____

 

 

_____
**United States District Judge**

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to such terms in the Complaint.

3